**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

**CIVIL ACTION NO. 04-336-JBC**

**PROMOTIONAL CONTAINERS, INC.,**                                    **PLAINTIFF,**

**V.**                          **MEMORANDUM OPINION AND ORDER**

**AZTEC CONCRETE ACCESSORIES, INC., ET AL.,**              **DEFENDANTS.**

* * * * * * * * * *

This matter is before the court on the defendant's motion for reconsideration and for summary judgment (DE 82). The court, having reviewed the record and being otherwise sufficiently advised, will deny the motion.

**I. Factual Background**

This is an action for infringement of United States Patent Number 4,942,714 ("the '714 patent"), which was issued on July 24, 1990, to the plaintiff's predecessor in interest. The patented device in question is a bolster used in the production of reinforced concrete. The plaintiff, Promotional Containers, Inc. ("Promotional"), alleges that three products manufactured by the defendants – the E-Z Lock bolster, the Strong Back bolster, and the PSBU bolster (collectively, "the accused products") – infringe the '714 patent.

Bolsters of the kind made by the parties are used to support reinforcing steel members, often referred to as rebar, in an elevated position when the concrete is poured over the rebar into a form or mold. The patented device was designed so that it could be manufactured in small pieces and connected together to form

whatever size bolster its user required.  To that end, the patented device possesses

the following pertinent elements:

> an elongated support member having a surface for supporting said
> reinforcing steel and leg means for holding said support member in an
> upright position; said support member and leg means being
> constructed from non-biodegradable material; said bolster further
> including first and second cross-members at opposite ends of said
> bolster as well as means for positively connecting bolsters together in
> series, said connecting means including a resilient connecting clip
> mounted to said first cross member at one end of said bolster, said
> clip being sufficiently resilient to snap over and engage a second cross
> member of an adjacent bolster.

U.S. Patent Number 4,942,714.[1]  The accused products feature a male connector

at one end of the bolster and a corresponding female connector at the opposite

end.  The accused products are then joined together by inserting the male

connector of one bolster into the female connector of an adjoining bolster.

The '714 patent was previously the subject of litigation between the

plaintiff's predecessor in interest, International Plastics Corp. ("International"), and

the defendant Aztec Concrete Accessories, Inc. ("Aztec").  In this earlier case,

Magistrate Judge James B. Todd issued a Report and Recommendation (hereinafter,

"Report") denying International's cross-motion for summary judgment but granting

in part and denying in part Aztec's motion for summary judgment.  More

---

[1]As noted by the court in its order following the *Markman* hearing in this
action, the '714 patent consists of 1 independent claim and 16 dependent claims;
the claim language cited above is taken from the independent claim, Claim 1 of the
'714 patent.  "Since the plaintiff has conceded that the dependent claims stand or
fall with the independent claim, the court need not separately address each claim."
DE 26, at 2.

specifically, after Magistrate Judge Todd construed Claim 1, he determined that Aztec's bolster did not literally infringe the '714 patent.  Magistrate Judge Todd also found, however, that genuine issues of fact precluded him from recommending that the court grant Aztec's motion for summary judgment under the doctrine of equivalents.  Before the court could enter an order adopting or rejecting the Magistrate Judge's Report, the parties settled.

The plaintiff commenced the present lawsuit against Aztec in 2004; the plaintiff subsequently added Aztec's parent corporation, Dayton Superior Corporation ("Dayton"), as a co-defendant.  This court held a *Markman* hearing on the issue of claim interpretation on April 15, 2005, and issued an order in which it presented its construction of the claim at issue.  The court specifically found that the term "'cross member' refers to the shorter portions that extend perpendicularly from the spine of the bolster.  The cross members traverse the elongated support member, which . . . is the longest portion of the bolster.  The cross members need not have legs but may have them."  DE 26, at 5-6.  The court also determined that the term "'mounted to' means that the connecting clip is directly connected or attached to the cross member."  *Id.*, at 7.

Following the court's claim construction ruling, Aztec filed a motion for partial summary judgment.  On October 4, 2005, the court denied Aztec's motion on the ground that "the parties' disagreement is one of fact."  DE 41, at 4.

**II. Standard of Review**

3

Rule 60(b) applies to final judgments, not to interlocutory orders.  An order denying summary judgment ordinarily is not final, whether the summary judgment would dispose of the entire case or would merely resolve particular issues or claims.  15B Wright, Miller, & Cooper, *Federal Practice and Procedure* § 3914.28. As this court's October 4, 2005, order denied Aztec's motion for summary judgment, it was not a final judgment.  Thus, Rule 60(b) is inapplicable in this situation.

District courts have the inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment.  *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991).  A district court may modify, or even rescind, such interlocutory orders.  *Id.*; *see also Leelanau Wine Cellars Ltd. v. Black & Red, Inc.,* 118 Fed. Appx. 942, 946 (6th Cir. 2004) (holding that a court's reconsideration and rescission of an earlier order granting an injunction was proper when the order had not yet been appealed).  Since the denial of a motion for summary judgment is an interlocutory order, this court possesses the power to modify its earlier order denying summary judgment, if it deems such action necessary.

When considering a motion for summary judgment, the court must determine that there are "no genuine issues as to any material fact and the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate

4

time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986). A court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The significant question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-53 (1986).

### III. Legal Analysis

#### A. Literal Infringement

An infringement analysis entails two steps: (1) the claims must be construed; and (2) the properly construed claims must be compared to the allegedly infringing device. *Gen. Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 981 (Fed. Cir. 1997). Claim construction is a question of law, *see id.*, and, as previously noted, the court has already determined the meaning and scope of the disputed claims. *See* DE 26. The literal infringement determination is a question of fact. *Gen. Mills*, 103 F.3d at 981. In patent cases, summary judgment is appropriate only when it is clear that no reasonable jury could return a verdict in the non-movant's favor, and any doubt as to the existence of any issue of material fact requires denial of the motion.

5

*Jackson v. VTech Telecomm. Ltd.*, 289 F. Supp. 2d 969, 973-74 (N.D. Ill. 2003). When the relevant aspects of the accused device's structure and operation are undisputed, however, the question of whether an accused product infringes a certain patent claim "turns on" the interpretation of those claims. *Johnson Worldwide Associates, Inc. v. Zebco Corp.*, 175 F.3d 985, 988 (Fed. Cir. 1999).

To infringe on the '714 patent, a resilient connecting clip mounted to a cross member of one bolster must snap over and engage a cross member of an adjacent bolster. The plaintiff argues that the male connector is mounted to a cross member, the female connector is a cross member, and that the two prongs of the male connector qualify as a connecting clip. The defendants dispute this characterization and assert that the female connectors of the accused products do not satisfy this court's definition of cross members. Thus, the defendants claim that the accused products do not feature a connecting clip mounted to a cross member of one bolster that engages the cross member of another bolster.

The crux of the parties' dispute is whether the female connectors of the accused products qualify as cross members under the court's construction of the '714 patent. As previously noted, the court stated in its *Markman* order that cross members are "the shorter portions that extend perpendicularly from the spine of the bolster" and "traverse the elongated support member." DE 26, at 5-6. An examination of the bolsters shows that the female connectors of that product do extend perpendicularly from the spine of the bolster and traverse the support

6

member.  *See* DE 31, at 3.  The court therefore cannot say as a matter of law that these female connectors are not cross-members for the purposes of the '714 patent.

The defendants argue that the female connectors are parallel to the spine of the bolster, not perpendicular to it.  The defendants are correct that the female connector attaches to the spine of the bolster in such a way that it runs parallel to the spine for a longer distance than it runs perpendicularly to it, but this does not change the fact that the female connector traverses the bolster and extends outward from it at a ninety-degree angle.  Although the female connector does not extend far from the spine of the bolster, this is of little consequence.  As construed by the court, the terms of the '714 patent claim at issue do not require that the cross-members be of the same size or shape or that they extend a certain minimum distance from the bolster's spine.  Since a jury could reasonably conclude that the female connectors of the accused products are cross members, and that the male connectors of the accused products are "resilient connecting clip[s] mounted to a cross member" of a bolster, the court will deny the defendants' motion for summary judgment on the plaintiff's claim of literal infringement.[2]

*B. Doctrine of Equivalents*

---

[2]Although Magistrate Judge Todd recommended granting Aztec's summary judgment motion as to literal infringement in 2000, he only found in the earlier case that the *male* connector of the accused product was *not* a cross member.  In this case, however, the plaintiff argues that the *female* connector is a cross member.  Magistrate Judge Todd's ruling on this issue is therefore not helpful to the court in resolving the literal infringement question before the court in this case.

Though it has already concluded that the defendants are not entitled to summary judgment on the plaintiff's literal infringement claim, the court, out of an abundance of caution, will also consider the propriety of summary judgment under the doctrine of equivalents.  Under this doctrine, a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is "equivalence" between the elements of the accused product and the claimed elements of the patented invention.  *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997).  The doctrine of equivalents thus allows patentees to claim "those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes."  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 733 (2002).

Prosecution history estoppel, however, is a limitation on the application of the doctrine of equivalents that "requires that the claims of a patent be interpreted in light of the proceedings in the [Patent and Trademark Office] during the application process."  *Festo*, 535 U.S. at 733.  The basic theory behind prosecution history estoppel is that, when the patentee originally claimed the subject matter alleged to infringe but then narrowed the claim in response to a rejection, he may not argue that the surrendered territory comprised unforeseen subject matter that should be deemed equivalent to the literal claims of the issued patent.  *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1139-40 (Fed. Cir. 2004)

8

(quoting *Festo*, 535 U.S. at 733-34).  Whether prosecution history estoppel applies to limit the doctrine of equivalents is a question of law for the court.  *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1354 (Fed. Cir. 1998).  Similarly, the scope of any surrender under the doctrine of equivalents is also a question of law.  *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1359 (Fed. Cir. 1999).

In *Festo*, the United States Supreme Court held that "[a] patentee's decision to narrow his claims through amendment may be presumed to be a general disclaimer of the territory between the original claim and the amended claim." *Festo*, 535 U.S. at 740.  The patentee bears the burden of proving that an amendment was not made for a reason that would give rise to estoppel.  *Id.*  The patentee may carry this burden by showing that: (1) the equivalent was unforeseeable at the time of the application; (2) the rationale underlying the amendment bears no more than a tangential relation to the equivalent in question; or (3) some other reason exists that suggests that the patentee could not reasonably be expected to have described the insubstantial substitute in question. *Id.* at 740-41.

The application for the '714 patent was a continuation-in-part of the parent application, number 152,701 ("the '701 patent").  The '701 patent application did not specify what structure would be used to connect bolsters but included only a claim for "means for positively connecting bolsters in a series;" this claim was Claim 3 of the '701 patent application.  A further dependent claim stated that this

9

means consisted of a male/female connector.  Two types of male/female connectors – parallel latching plates and a pin/aperture structure – were also specified in dependent claims.

These claims were rejected by the Patent Examiner as either anticipated by or obvious over earlier patents.  Specifically, Claim 4 (regarding male/female connectors) and Claims 7 and 8 (regarding pin/aperture connectors) of the '701 application were rejected as anticipated by patent number 3,529,392, which was issued in 1970 to Gerald F. Adams ("Adams patent").  Claims 5 and 6 (regarding parallel latching plates) were rejected as obvious in light of the Adams patent and another patent issued to Leon Shelby ("Shelby patent").  In response to this rejection, the plaintiff[3] filed the '714 patent application, which included, in dependent Claim 18, language specifying the connecting means as "a resilient connecting clip mounted to said first cross member at one end of said bolster, said clip being sufficiently resilient to snap over and engage a second cross member of an adjacent bolster."  Claim 18 depended on Claim 3 of the '701 patent application; further, claims 3 through 8 of the '714 application were identical to corresponding claims of the '701 application.

The patent examiner rejected Claims 3 through 18, but he also indicated that Claim 18 would be permitted if it were rewritten in independent form.  The plaintiff

---

[3]As noted by Magistrate Judge Todd in his Report, the plaintiff did not technically participate in the prosecution of what became the '714 patent.  Like the Magistrate Judge, the court refers to the plaintiff, an assignee of the patent, as if it were involved in the prosecution of the patent solely for ease of reference.

10

then amended its application, and what was originally Claim 18 of the '701 application became Claim 1 of the '714 patent.  In light of this prosecution history, the defendants argue that prosecution history estoppel bars the plaintiff from asserting the doctrine of equivalents with respect to all means of connection other than the one espoused in Claim 1 of the '714 patent – that is, a resilient connecting clip mounted on a first cross member that snaps over and engages a second cross member of an adjacent bolster.   The defendants then claim that, once the plaintiff is estopped from asserting this surrendered subject matter, they are entitled to summary judgment on the plaintiff's doctrine of equivalents claims.

In the 1999-2000 litigation between International and Aztec, Magistrate Judge Todd rejected the same arguments now advanced by the defendants. Specifically, the Magistrate Judge found first that "the term 'clip' is to be given a broader meaning than that urged by [Aztec]" and that it did not "necessarily exclude male/female connectors, parallel latching plates, or pin/aperture structures." Report, at 18.  Thus, the Magistrate Judge concluded that "[t]he plaintiff did not surrender those other embodiments, which are included in the narrower, dependent claims of the '714 Patent." *Id.*  Regarding the element of the '714 patent that requires the clip to "snap over and engage a cross member of an adjacent bolster," Magistrate Judge Todd concluded that "*resiliency* was the key feature in obtaining coverage for the device, not the fact that it snapped over and engaged a cross member of an adjacent bolster." *Id.* at 19 (emphasis in original).  Thus, the only

11

territory surrendered by the plaintiff during the prosecution of its patent was a connection device that did not contain a resilient connecting clip. *Id.* Magistrate Judge Todd also opined that the requirement that the clip "snap over and engage a cross member of an adjacent holder" was added merely to "further describe the device." *Id.* at 19-20.

The court concurs with Magistrate Judge Todd's reasoning and conclusions on this issue. Since the court has already determined that a "connecting clip" means "any device that grips, clasps, or hooks two objects together" and specifically includes male/female connectors, *see* DE 26 at 6, Magistrate Judge Todd was correct when he found that the plaintiff did not surrender the subject matter embodied by this equivalent. The court also agrees that the plaintiff surrendered only the subject matter relating to a connection device that was not resilient during prosecution of the claim. As the court noted in its *Markman* order, "the 'snap' has more to do with the concept of resiliency and its ability to move quickly to its original shape or position after being stretched or compressed." DE 26, at 6. The "snap over and engage" language was therefore read to embody any resilient clip. It follows from this that the plaintiff surrendered only connection devices that are not resilient during its prosecution history; this is the scope of any estoppel that should apply against the plaintiff.

To the extent that a presumption of prosecution history estoppel arises from the plaintiff's narrowing amendments from the '701 application to the '714

12

application, the plaintiff has sufficiently rebutted this presumption.  The court agrees with Magistrate Judge Todd's conclusion that the additional "snap over and engage" language in the '714 application was made to describe the device, not as a means of ensuring its patentability.  Thus, this is a case in which "the rationale underlying the amendment . . . bear[s] no more than a tangential relation to the equivalent in question."  *See Festo*, 535 U.S. at 740.

The defendants also assert that *Festo* altered previous Supreme Court doctrine regarding prosecution history estoppel such that Magistrate Judge Todd's report, which pre-dated that case, is no longer a reliable source of guidance for the court in determining the applicability and scope of estoppel in this case.  In *Festo*, however, the Supreme Court actually chided the Court of Appeals for ignoring the principle that "courts must be cautious before adopting changes that disrupt the settled expectations of the inventing community."  *Festo*, 535 U.S. at 739.  The Court went on to state that "[t]here is no justification for applying a new and more robust estoppel to those who relied on prior doctrine" and stated that *Warner-Jenkinson*, the case relied on by Magistrate Judge Todd in his report, struck "the appropriate balance by placing the burden on the patentee to show that an amendment was not for the purposes of patentability."  *Id.*  In light of these passages, the court rejects the defendants' argument that a stricter version of prosecution history estoppel applies in the wake of *Festo*.

Judgment as a matter of law under the doctrine of equivalents is appropriate

13

if no reasonable fact finder could determine that a claim limitation is met in the accused device by a substantial equivalent. *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 981 (Fed. Cir. 1999). The defendants have not met this standard. Given the limited scope of prosecution history estoppel defined herein, the court could not grant the defendant's motion for summary judgment under the doctrine of equivalents even if it had found that the defendants did not literally infringe the plaintiff's device as a matter of law. Accordingly,

**IT IS ORDERED** that the defendants' motion for reconsideration and for summary judgment (DE 82) is **DENIED**. A scheduling order will be entered separately.

Signed on March 2, 2007

*Jennifer B. Coffman*

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

14